1  W. West Allen, Esq.
   Nevada Bar No. 5566
2  Jonathan W. Fountain, Esq.
   Nevada Bar No. 10351
3  HOWARD & HOWARD ATTORNEYS PLLC
   3800 Howard Hughes Parkway, Suite 1000
4  Las Vegas, Nevada 89169
   Telephone: (702) 257-1483
5  Email: wwa@h2law.com
   Email: jwf@h2law.com
6
   Luke A. Connelly, Esq.
7  (Admitted *pro hac vice*)
   Peter Fishkind, Esq.
8  (Admitted *pro hac vice*)
   WINSTON & STRAWN LLP
9  200 Park Avenue
   New York, NY 10166-4193
10 Telephone: (212) 294-6700
   Email: lconnelly@winston.com
11 Email: pfishkind@winston.com

12 *Attorneys for Plaintiffs and Counterclaim Defendants*
   *AbleView Enterprise Limited and AbleView Brands Limited*
13
                    **UNITED STATES DISTRICT COURT**
14                     **DISTRICT OF NEVADA**

15 ┌──────────────────────────────────────┬──────────────────────────────
   │ ABLEVIEW ENTERPRISE LIMITED and      │
16 │ ABLEVIEW BRANDS LIMITED,             │  Case No. 3:24-cv-00409-ART-CSD
   │                                      │
17 │              Plaintiffs,             │  **ABLEVIEW ENTERPRISE LIMITED**
   │        vs.                           │  **AND ABLEVIEW BRANDS LIMITED'S**
18 │                                      │  **MOTION TO DISMISS FIRST**
   │ JONATHAN PETRILLO and COSMETIC       │  **AMENDED COUNTERCLAIM**
19 │ SKIN SOLUTIONS LLC,                  │
   │                                      │
20 │              Defendants.             │
   ├──────────────────────────────────────┤
21 │ JONATHAN PETRILLO and COSMETIC       │
   │ SKIN SOLUTIONS LLC,                  │
22 │                                      │
   │              Counterclaimants,       │
23 │        vs.                           │
   │                                      │
24 │ ABLEVIEW ENRTERPRISE LIMITED,        │
   │ ABLEVIEW BRANDS LIMITED, and         │
25 │ ABLE VIEW INC., a Cayman Islands     │
   │ corporation,                         │
26 │                                      │
   │              Counterclaim Defendants.│
27 └──────────────────────────────────────┘

28

HOWARD & HOWARD ATTORNEYS PLLC

Plaintiffs and Counterclaim-Defendants AbleView Enterprise Limited and AbleView Brands Limited (collectively, "ABLV"), by and through their undersigned attorneys, hereby move this Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and 9(b), to dismiss the First Amended Counterclaim (the "Amended Counterclaim") of Counterclaimants' Jonathan Petrillo ("Petrillo") and Cosmetic Skin Solutions LLC ("CSS" and, along with Petrillo, "Counterclaimants") (ECF No. 27).

**PRELIMINARY STATEMENT**

The Amended Counterclaim should be dismissed in its entirety because none of its claims assert a meritorious cause of action. Most significantly, the Amended Counterclaim's fraudulent misrepresentation claim fails allege an actionable misstatement of fact, justifiable reliance, or resulting damages with the required particularity required under the Federal Rules of Civil Procedure.

The fraud claim fails to allege an actionable misrepresentation because the entire claim is predicated on future promises of performance to close the contemplated acquisition. The Amended Counterclaim, thus, relies on opinions rather than facts as required to allege fraud, since "[n]o misrepresentation claim, either intentional or negligent, lies from a false promise to perform in the future." *Nieto v. Litton Loan Servicing, LP*, 2011 WL 797496, at *6 (D. Nev. Feb. 23, 2011). And, as stated in the Amended Counterclaim itself, the negotiations were subject to a letter of intent and term sheet that expressly conditioned the obligations to close on the signing of a definitive purchase agreement. These flaws are fatal to this claim because a fraudulent misrepresentation claim must be based on an actual misrepresentation of fact.

Next, the fraud claim does not allege justifiable reliance under the heightened standard demanded where, as here, Counterclaimants were sophisticated parties that were represented by counsel. And reliance on the alleged misstatements could not be justified since the future promises of performance in the letter of intent and term sheet were inherently preliminary and conditional, stating that there would be no obligation to close the proposed transaction until a final acquisition agreement was negotiated and executed. Moreover, the allegations in the Amended Counterclaim are self-contradictory on this score since the contemplated acquisition did not close

HOWARD & HOWARD ATTORNEYS PLLC

1

after years of negotiations and diligence, further imposing duties on Counterclaimants to question the likelihood that the acquisition would close, and refuting any claim of reasonable reliance on any statement that such closing was imminent.

Moreover, the fraud claim fails to allege any actual damages (let alone allege actual damages with particularity) by putting forth exclusively hypothetical allegations "on information and belief" that ABLV has utilized information obtained during the negotiations to harm Counterclaimants. The failure to plead facts of actual damages further dooms the fraud claim that must allege that a party suffered cognizable damages resulting from their reliance on a misrepresentation.

The reality here is that Counterclaimants hoped that an agreement could be reached for the acquisition (as did ABLV) and took calculated risks to expend efforts to reach an agreement, but the parties could not settle on terms and negotiations fell apart when it was revealed that Counterclaimants were defrauding ABLV by selling Supreme Olive Serum without the key Olive Leaf Extract ingredient (as explained in the Complaint filed by ABLV).

The other claims included in the Amended Counterclaim suffer from similar deficiencies. In particular, the claims focused on the breach of non-disclose agreements are also based on hypothetical conduct and fail to allege any facts showing any actual breach or resulting damages to Counterclaimants. The claim for the breach of the distribution agreement fails because Counterclaimants have not performed under said agreement so cannot now allege breach. And, for each of the claims for breach of the implied covenant of the non-disclosure agreements and the distribution agreement, the allegations in the Amended Counterclaim are based on the same conduct as the breach of contract claims, which makes them duplicative and ripe for dismissal under Nevada law. Lastly, the unjust enrichment claim is entirely devoid of any factual allegations so cannot survive when based solely on legal conclusions.

**FACTUAL BACKGROUND**

As discussed in greater detail in the Complaint[1] filed in this action, ABLV is a leading

---

[1] All allegations in the Complaint should be accepted as true, but none of the allegations should be treated as an admission of any wrongdoing on the part of ABLV.

HOWARD & HOWARD ATTORNEYS PLLC

distributor of cosmetics products in China.  ABLV and CSS entered into the Distribution Agreement[2] in December 2020 for ABLV to purchase and distribute Cosmetic Skin Solutions' Supreme Olive Serum ("Supreme Olive Serum") within the Chinese market.  Petrillo is the owner of CSS.

ABLV, Petrillo, and CSS had enjoyed a generally favorable business relationship through early 2024, until it was revealed that CSS's Supreme Olive Serum products did not actually contain Olive Leaf Extract, despite CSS's and Petrillo's many representations that this critical ingredient was in their products.  During the course of that relationship, ABLV considered acquiring CSS and had certain preliminary and conditional discussions about doing so.  Of course, after ABLV uncovered that the Supreme Olive Serum products did not contain Olive Leaf Extract, those discussions broke down.

The revelations that the Supreme Olive Serum products did not contain Olive Leaf Extract have caused millions of dollars of damages to ABLV through, *inter alia*, its inability to sell faulty product inventory and reputational harm in the Chinese market.  Petrillo and CSS have since acknowledged their failure to provide Supreme Olive Serum products with Olive Leaf Extract but, nevertheless, have refused to reimburse ABLV for the faulty inventory it is holding.

With Petrillo and CSS continuing to refuse to provide a reimbursement, ABLV was left with little choice but to file the Complaint, alleging claims for (i) Fraud/Intentional Misrepresentation;  (ii) Fraudulent Inducement;  (iii) Fraudulent Concealment;  (iv) Tortious Interference with Business Relations; (v) Negligent Misrepresentation; (vi) Unjust Enrichment; and (vii) Violation of Nev. Rev. Stat § 104.2711 et seq.

In response, Petrillo and CSS filed an Answer and Counterclaim on October 4, 2024.  *See* ECF No. 17.  During a meet and confer between the parties, ABLV identified certain deficiencies with the Counterclaim and CSS offered to file an Amended Counterclaim to potentially moot the need for ABLV to file a motion to dismiss.  On November 8, 2024, Petrillo and CSS filed their Amended Counterclaim, adding new causes of action for breach of contract (Fifth Cause of

---

[2] Unless otherwise noted, capitalized terms herein shall have the meanings ascribed in the Complaint.

3

HOWARD & HOWARD ATTORNEYS PLLC

Action), breach of the implied covenant of good faith and fair dealing (Sixth Cause of Action), and fraudulent misrepresentation (Eighth Cause of Action) as well as a new party, Able View Inc., a Cayman Islands corporation.[3]  These new causes of action asserted that ABLV engaged in misconduct during the course of the discussions between the parties concerning the potential acquisition of CSS.

In particular, the Amended Counterclaim states that CSS and Able View Inc. entered into a Letter of Intent in April 2021 (the "Letter of Intent") and a Term Sheet in November 2022 (the "Term Sheet") as part of their discussions about the potential acquisition of CSS.  The Letter of Intent provides, in relevant part, the following:

> With the exception of the Confidentiality and No Shop provisions herein, this Letter of Intent is a non-binding document, and is entered into for the purpose of facilitating further discussions of the proposed Transaction, which will be based on this Letter of Intent.  A binding commitment from Buyer with respect to the Transaction can only result from the execution and delivery of a mutually satisfactory PA.[4]

The Letter of Intent also included fourteen separate "Conditions Precedent to Signing and/or Closing."  In explaining the purpose of these conditions precedent, the Letter of Intent provides the following:

> The Transaction shall be subject to Seller's fulfillment of certain conditions prior to the Signing Date and prior to the Closing Date.  These conditions are subject to findings in the course of the Due Diligence, subject to the requirements of a tax efficient structure, and subject to changes due to a feasible alternative structure.  The conditions ("Conditions Precedent") shall include but not be limited to the following minimum conditions[.][5]

The Term Sheet includes similar language about the status of the potential transaction, stating the following:

> This Term Sheet is for discussion purposes only and does not contain all of the terms with respect to the proposed transaction.  The parties acknowledge that they must complete negotiations on the points set forth in this Term Sheet, as well as on

---

[3] At the time of this filing, it appears that Able View Inc. has not been served with the Amended Counterclaim.

[4] See Ex. A to Declaration of Peter Fishkind ("Fishkind Decl."), at 5.

[5] See Ex. A to Fishkind Decl., at 3–5.

4

1    points beyond the scope of this Term Sheet, and execute definitive documentation, before the parties can be bound and any transaction can be consummated.[6]

2    In sum, the Amended Counterclaim includes claims for (i) breach of contract of the

3    Distribution Agreement; (ii) breach of the implied covenant of good faith and fair dealing of the

4    Distribution Agreement; (iii) breach of contract of a non-disclosure agreement, referred to by

5    Counterclaimants as the "Visitor NDA"; (iv) breach of the implied covenant of good faith and

6    fair dealing of the Visitor NDA; (v)  breach of contract of a non-disclosure agreement, referred to

7    by Counterclaimants as the "Mutual NDA"; (vi) breach of the implied covenant of good faith and

8    fair dealing of the Mutual NDA; (vii) unjust enrichment; and (viii) fraudulent misrepresentation.

9    ABLV now brings this motion to dismiss the Amended Counterclaim.

10    ## LEGAL STANDARD

11    FRCP 12(b)(6) authorizes the dismissal of a complaint when there has been a failure to

12    state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must

13    contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

14    face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).  "Threadbare

15    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

16    suffice." *Id*.  A claimant must allege "enough facts to state a claim to relief that is plausible on

17    its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead "factual content

18    that allows the court to draw the reasonable inference that the defendant is liable for the

19    misconduct alleged." *Ashcroft*, 556 U.S. 678.  A dismissal under Rule l2(b)(6) may be based on

20    the lack of sufficient facts alleged under cognizable legal theories.  *Navarro v. Block*, 250 F.3d

21    729, 732 (9th Cir. 2001).  The court is not "required to accept as true allegations that are merely

22    conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden

23    State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Thus, a claim should be dismissed upon a

24    failure to allege facts to support the elements of said claim.

25    Further, the Court may disregard allegations in a complaint if contradicted by facts

26    established in documents that are referenced or central to the claims.  *See Wynn v. Clark Co. Bd.

27    Of Comm'rs.*, 74 F. App'x 808, 809 (9th Cir. 2003) (citations omitted); *Branch v. Tunnel*, 14 F.3d

28    ---
[6] *See* Ex. B to Fishkind Decl., at 1.

HOWARD & HOWARD ATTORNEYS PLLC

449, 454 (9th Cir. 1994) (court may consider documents exhibited, referred to, or that are central to the plaintiffs' complaint).  While "[n]ormally the Court would resolve [a] factual dispute in favor of . . .the non-moving party. . .if a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint."  *Thomas v. U.S. Bank Nat'l Ass'n*, 2015 WL 12434361, at *7 (S.D. Cal. Nov. 20, 2015) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)) (cleaned up).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In particular, "[f]raud claims must meet the heightened [Rule 9(b)] pleading standard and allege the who, what, when where, and how."  *Lopez v. Bank of Am., N.A.*, 2013 WL 1501449, at *3 (D. Nev. Apr. 10, 2013).

## ARGUMENT

A.     <u>The Fraudulent Misrepresentation Claim Should be Dismissed.</u>

"Under Nevada law, a claim of fraudulent misrepresentation requires the plaintiff to establish each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant's basis for making the representation was insufficient); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance."  *Summit Growth Mgmt., LLC v. Marek*, 2012 WL 3886089, at *5 (D. Nev. Sept. 6, 2012) (dismissing fraudulent misrepresentation claim for failure to plead necessary elements); *see also Luxx Int'l, LLC v. Pure Water Techs.*, 2023 WL 5333254, at *2 (D. Nev. Aug. 17, 2023) ("To state a claim for fraudulent misrepresentation, a plaintiff must allege five elements: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false; (3) the defendant intended to induce the plaintiff to act or to refrain from acting in reliance on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff suffered damages from the reliance.")  The Amended Counterclaim fails to meet their burden under FRCP 9(b) to plead with particularity (i) a false representation; (ii) justifiable reliance on any misrepresentation; and (iii) damages resulting from any such reliance.  Therefore, the fraud claim should be dismissed.

1.     <u>The Amended Counterclaim fails to plead fraud with particularity.</u>

The circumstances of a fraud claim must be detailed, including the time, place and identity of the parties involved. *See Lopez*, 2013 WL 1501449, at *3. "Allegations of fraud, without specificity of the particulars, are merely the allegations of opinions, not actions." *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2001). To survive a motion to dismiss for a fraud claim under the standard set by FRCP 9(b), the elements must be pled with a "high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *Natividad v. New Penn Fin., LLC*, 2016 WL 1384810, at *2 (D. Nev. Apr. 7, 2016) (dismissing misrepresentation claim upon failure to plead elements with a "high degree of meticulousness") (citing *Desaigoudar*, 223 F.3d at 1022). In this case, as further described herein, the Amended Counterclaim falls far short of the exacting standard set by FRCP 9(b).

At the most basic level, the Amended Counterclaim fails to delineate which allegations should be attributed to AbleView Enterprise Limited, AbleView Brands Limited, and Able View Inc., other than to assert that Able View Inc. (which has not yet been served) executed certain agreements during the course of the negotiations between the parties. This failure to specify the parties, on its own, dooms the claim, since the Counterclaimants "must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (citations and quotations omitted) (cleaned up).

In addition, as set forth below, the Counterclaim fails to properly allege a false statement of material fact, justifiable reliance or damages. Each of these failures is fatal and warrants dismissal of the fraud claim.

2.     <u>The Amended Counterclaim fails to plead a false statement of material fact.</u>

To allege a false statement, the pleading must identify a false statement of fact and explain how and why a statement is false. *See George v. Morton*, 2007 WL 680787, *10 (D. Nev. March 1, 2007) ("fraud allegation . . . fails Rule 9(b)'s particularity requirement because Plaintiff does not allege what is false about the statement and why it is false"). The pleading must go further "than only identifying the transaction, the complaint must also 'set forth what is false or misleading about a statement, and why it is false.'" *Snyder v. U.S. Bank, N.A.*, 2015 WL 3400512,

7

at *3 (D. Nev. May 27, 2015) (citation omitted).  Moreover, courts have regularly denied a cause of action for a "misrepresentation claim, either intentional or negligent, [that] lies from a false promise to perform in the future." *Nieto*, 2011 WL 797496, at *6.

Here, the Amended Counterclaim does not allege that any specific statement was false.  Instead, the generalized allegations focus on how "ABLV emailed Counterclaimants an executed LOI for ABLV's acquisition of CSS, stating that the transaction would close before December 31, 2021[;]" however, the transaction "did not close before December 31, 2021" (Am. Countercl. ¶¶ 26–27) as well as the ensuing efforts to complete the transaction (*see id*. ¶¶ 49–50 stating that the "transaction, however, was never completed" after discussing the execution of the Term Sheet).  Thus, the Counterclaim fails to identify any "false statements" beyond the negotiations between the parties about the potential transaction and how those statements could be deemed "false" beyond the fact that the contemplated transaction was not completed after the parties reached an impasse.  However, the Amended Counterclaim must identify false statements of fact, not mere opinion, and demonstrate how the Counterclaimants were lied to.  *Graziose*, 202 F.R.D. at 642 (dismissing fraud claims as "merely the allegations of opinions, not actions").  Moreover, the Amended Counterclaim fails to allege "what specifically was false about the representations, and *why those representations were false when made*."  *McGraw v. Kim*, 2023 WL 3170059, at *5 (D. Nev. Apr. 28, 2023) (emphasis added).  A fraud claim must be based on more than statements that a party would use its "best efforts" in the transaction.  *See id.* (dismissing fraudulent misrepresentation claim for failure to "adequately allege [the] claim with the requisite particularity . . . beyond conclusory 'best effort' type allegations").

These flaws are critical here since the parties attempted to reach an agreement but were unable to do so before it was revealed that Counterclaimants had been providing ABLV with Supreme Olive Serum without the Olive Leaf Extract ingredient.

Moreover, the terms of the Letter of Intent as well as other documents executed by the parties in connection with the contemplated transaction reveal the conditional nature of the negotiations, predicated on the potential of future performance.  Therefore, any of the alleged statements concerning a desire to execute the contemplated transaction cannot be considered

8

HOWARD & HOWARD ATTORNEYS PLLC

"false" because they, like the documents upon which these discussions and negotiations were based were, necessarily, conditional with ABLV having no obligation to acquire CSS. Indeed, "[n]o misrepresentation claim, either intentional or negligent, lies from a false promise to perform in the future." *Nieto*, 2011 WL 797496, at *6; *Thoms v. Am.'s Servicing Co.*, 2010 WL 3910083, at *9 (D. Nev. Oct. 1, 2010) (same); *see also Song v. MTC Fin., Inc.*, 2021 WL 1601085, at *4 n.5 (D. Nev. Apr. 23, 2021) (dismissing fraud claim since "[t]here is no inference of a fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed") (quoting *Tallman v. First Nat. Bank of Nev.*, 208 P.2d 302, 307 (Nev. 1949)). Since the basis of the fraud claim revolves around a future promise of performance and fails to allege any misrepresentation at the time a statement was made, the claim must be dismissed.

Of course, while the Amended Counterclaim did not attach the Letter of Intent and other referenced documents that would reveal their conditional language, these documents are incorporated by reference. *See Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *3 (D. Nev. Oct. 7, 2024). Courts will dismiss misrepresentation claims where the terms of the incorporated documents undermine the allegations made in support of the claim. *Thomas*, 2015 WL 12434361, at *7 (dismissing misrepresentation claim upon reference to notation made in letter that contradicted allegations).

Here, in the section titled "Effect of the Letter of Intent," the Letter of Intent explicitly provides that it "is a non-binding document, and is entered into for the purpose of facilitating further discussions of the Proposed Transaction, which will be based on this Letter of Intent. A Binding commitment from Buyer with respect to the Transaction can only result from the execution and delivery of a mutually satisfactory [Purchase Agreement]." Ex. A to Fishkind Decl., at 5. Likewise, the Term Sheet entered into between Able View Inc. and CSS on or about November 22, 2022, provides that the document "sets forth certain non-binding statements of intentions of Able View Inc." and that "[a] binding commitment will only result from the execution of definitive documentation" as well as that "[t]he parties acknowledge that they must complete negotiations . . . and execute definitive documentation, before the parties can be bound and any transaction be consummated." Ex. B to Fishkind Decl., at 1. Courts have dismissed fraud

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

claims based on similar conditional language in the letters of intent and should do the same here. *See, e.g.*, *JDIS Grp., LLC v. 626 Holdings, LLC*, 2021 WL 4813757, at *4 (C.D. Cal. June 7, 2021) (dismissing fraud claim where the LOI stated that "the sections regarding the Transaction shall not be binding") (citation omitted).  Holding otherwise would "allow every breach of contract to support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." *Smith v. Allstate Ins. Co.,* 160 F. Supp. 2d 1150, 1153–54 (S.D. Cal. 2001) (citation and quotations omitted) (cleaned up).[7]

This cannot be the standard and, for this reason, cases within the 9th Circuit have repeatedly dismissed similar claims.  *See Dimartini v. Purcell Tire & Rubber Co.*, 2010 WL 11594907, at *5 (D. Nev. July 19, 2010) ("[P]laintiffs allege that defendants' willingness and ability to perform under the agreement constituted misleading statements actionable in a claim for misrepresentation.  However, as previously noted in the original complaint's dismissal, *these representations do not constitute actionable misrepresentations* that can support claims for intentional and negligent misrepresentation.") (emphasis added).[8]    Here, the Amended Counterclaim essentially pleads that Counterclaim-Defendants failed to follow through on their promise to acquire CSS.  This comes short of alleging fraud, since "[a]dopting plaintiff's argument would effectively eviscerate the effect of Rule 9(b)" and turn "every breach of contract would support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." *Richardson v. Reliance Nat'l Indem. Co.*,

---

[7] In addition to the referenced documents, the communications, all of which were made in the context of the negotiations that were pursuant to the conditional language in the documents, include the same conditional language. *See, e.g.*, Email from Dennis Tang to Jonathan Petrillo on April 17, 2021, attached as Ex. C to Fishkind Decl. ("But pls be reminded that this [Letter of Intent] is not a Sell and Purchase Agreement (SPC) between us…. Once both of us sign this letter, we will conduct formal Due Diligence review on your company, including Legal and financial aspect. . . . After DD [due diligence] works, both of us will formally talk and draft the SPC, Once we agree all terms, we sign the contracdt [sic] and close the deal."); Email from Dennis Tang to Jonathan Petrillo on February 3, 2022, attached as Ex. D to Fishkind Decl. ("A proper financial statement of the seller party is a necessary document for any acquisition deal. . . . There is no way for us to close the deal without this document.")

[8] *See also JDIS Grp., LLC*, 2021 WL 4813757, at *4 (dismissing fraud claim where plaintiffs alleged "the [LOI] itself contains actionable misrepresentations," but the LOI stated "the sections regarding the Transaction shall not be binding") (citation omitted).

10

2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000).[9]  The Court should reject this attempt and dismiss the fraud claim due to a failure to identify a false statement.

Therefore, the Court should dismiss the Amended Counterclaim's fraud claim, predicated on the unenforceable "future promise" to perform, conditional language of the Letter of Intent and other documents concerning the contemplated transaction, as well as the failure to allege any false misrepresentation with particularity.

3.    <u>The Amended Counterclaim fails to plead justifiable reliance.</u>

The Amended Counterclaim's fraud claim fails for the additional reason that it fails to plead justifiable reliance.  In particular, the Amended Counterclaim and its incorporated documents reveal that there is simply no way that Counterclaimants could have justifiably relied on the alleged false statements.

To establish justifiable reliance, "[t]he false representation must have *played a material and substantial part in leading the plaintiff to adopt his particular course;* and when he was not in any way influenced by it, and would have done the same thing without it for other reasons, his loss is not attributed to the defendant." *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1414 (D. Nev. 1995) (quoting *Blanchard v. Blanchard*, 108 Nev. 908, 911 (1992)) (emphasis in original).  And such reliance must be objectively "justifiable" under the circumstances. *Young v. Cree, Inc.*, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018) (granting motion to dismiss fraud claim upon failure to allege "circumstances surrounding the alleged fraud including Young's reliance).  In particular, sophisticated parties, represented by counsel are held to a higher standard to demonstrate justifiable reliance. *See Insitu Inc. v. Kent,* 388 F. App'x 745, 746 (9th Cir. 2010) (finding the plaintiff could not show reasonable reliance given that he was "a sophisticated businessman, was represented by counsel, had an adversarial relationship with the company, and was allowed twenty-one days to consider whether to sign the Agreement"); *see also Nat'l Football League v. Gruden*, 548 P.3d 775 (Nev. 2024) (reversing order from District Court of Nevada where party was represented and was a sophisticated party); *Clayton v. Automated Gaming Techs.,*

HOWARD & HOWARD ATTORNEYS PLLC

---

[9] *See also Smith*, 160 F. Supp. 2d at 1153–54) (characterizing argument that fraud claim based on purported intent to not honor contract as "specious" and that it "contradicts the heightened pleading requirements of Rule 9(b)").

11

*Inc.*, 2014 WL 3941304, at *2 (E.D. Cal. Aug. 12, 2014).  The allegations fall far short of this standard.

Here, not only were Counterclaimants sophisticated business parties represented by corporate counsel, but the circumstances alleged demonstrate that they could not have justifiably relied on the alleged representations.  As noted above, the Letter of Intent and Term Sheet were both preliminary and conditional documents, which highlighted that neither party would be bound until the final transaction documents were negotiated and executed.  In addition, the many difficulties and delays to close the contemplated transaction should have raised questions with Counterclaimant and their counsel about whether the transaction would ever be finalized.  *See, e.g.*, Am. Countercl. ¶ 50 ("ABLV and its representatives engaged in other tactics to maintain the appearance of pursuing a transaction through due diligence and negotiation, including through Mr. Shen's regular communications with Petrillo throughout 2023 using the WeChat application, but this transaction did not proceed beyond the November 2022 term sheet.").  These were obvious signals to indicate that a closing for the transaction was not imminent and provided Counterclaimants with a duty to investigate the likelihood that an agreement could be reached.  *See JB Carter Enters., LLC v. Elavon, Inc.*, 2023 WL 5206887, at *13 (D. Nev. Aug. 11, 2023) (duty to investigate is present when a party "has information that would serve as a danger signal and a red light to any normal person of his intelligence and experience") (citation and alterations omitted).  No investigation is alleged so reliance cannot be established, and the claim should be dismissed.

Ultimately, the Amended Counterclaim's allegations stem from the Letter of Intent, asserting that "[b]ased on CSS and Petrillo's extant business relationship with ABLV, which continued during this time period [during which the LOI was transmitted], CSS and Petrillo reasonably relied upon the representations of ABLV and ABLV's representatives in making their business decisions." Am. Countercl. ¶ 20.  However, the express language of the Letter of Intent, which was executed on June 5, 2021, states that a transaction was set to close on December 31, 2021, and that "[t]his Letter of Intent expires three hundreds and sixty five (365) calendar days from the execution date hereunder." Ex. A to Fishkind Decl., at 5–6.  Likewise, the Term Sheet,

12

dated November 22, 2022, further provides that an "Initial Closing" is "anticipated to occur during the first quarter of 2023." Ex. B to Fishkind Decl., at 2. Furthermore, the Letter of Intent set forth *fourteen separate* "Conditions Precedent to Signing and/or Closing." *See* Ex. A to Fishkind Decl., at 3–6. Most importantly, the Letter of Intent states:

> With the exception of the Confidentiality and No Shop provisions herein, this Letter of Intent is a non-binding document, and is entered into for the purpose of facilitating further discussions of the proposed Transaction, which will be based on this Letter of Intent. A binding commitment from Buyer with respect to the Transaction can only result from the execution and delivery of a mutually satisfactory PA.[10]

The Term Sheet also includes similar language. providing the following:

> This Term Sheet is for discussion purposes only and does not contain all of the terms with respect to the proposed transaction. The parties acknowledge that they must complete negotiations on the points set forth in this Term Sheet, as well as on points beyond the scope of this Term Sheet, and execute definitive documentation, before the parties can be bound and any transaction can be consummated.[11]

The plain terms of these documents foreclose the possibility that anyone could have justifiably relied on an agreement being a "sure thing" with numerous steps remaining during the negotiation and evaluation process. Each party clearly bore the risk that the transaction may be close.

Nevertheless, Counterclaimants assert that they continued to rely on alleged misrepresentations from ABLV for three years, even though no deal was reached and throughout each of the tentative deadlines set by the various documents executed by the parties. The conflict between Counterclaimants' allegations completely undermines any claim of reliance, since Counterclaimants, who are sophisticated businesspeople represented by counsel, were aware that no transaction was on track to close as planned but still claim to rely on alleged misrepresentations from as late as February 2024. Am. Countercl. ¶ 147. Such reliance is not justifiable, since it is not connected to any reasonable expectation that a transaction was set to close. Rather, Counterclaimants merely hoped that an agreement could be reached (as did ABLV) and took calculated risks to expend efforts to reach an agreement, but the parties could not settle on ultimate terms and negotiations fell apart when it was revealed that Counterclaimants were defrauding

---

[10] *See* Ex. A to Fishkind Decl., at 5.

[11] *See* Ex. B to Fishkind Decl., at 1.

ABLV by selling Supreme Olive Serum without the key Olive Leaf Extract ingredient.

Moreover, just as a false statement cannot be predicated on a conditional agreement, the Amended Counterclaim cannot establish justifiable reliance based these conditional statements under the demanding standards set by FRCP 9(b).  Holding that justifiable reliance can be established based on conditional statements would stretch the breadth of a fraud claim to the extent that "every breach of contract would support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." *Richardson*, 2000 WL 284211, at *5; *see also JDIS Grp., LLC*, 2021 WL 4813757, at *4 (dismissing fraud claim "[g]iven the unambiguous language that the [LOI] was merely 'an agreement to make an agreement'") (citation omitted); *NLRK, LLC v. Indoor Ag-Con, LLC*, 2022 WL 293252, at *4 (D. Nev. Jan. 31, 2022) (dismissing fraudulent misrepresentation claim).  This is obviously improper, and the court should not permit Counterclaimants to continue with their fraud claim due to a failure to plead justifiable reliance with the particularity demanded by FRCP 9(b).

4.    The Amended Counterclaim fails to plead damages resulting from the purported fraud.

The fraud claim should be dismissed for the additional reason that the Amended Counterclaim fails to allege actual damages resulting from reliance on any purported misrepresentations by ABLV.  Instead, the recitation of the fraud claim in the Amended Counterclaim entirely focuses on hypothetical, vague references to how ABLV obtained the "formulation" of certain CSS products "to the point where ABLV can obtain the products used and has observed CSS's know-how and technical knowledge to manufacture those products" and that "ABLV obtain[ed] CSS's financial performance information." Am. Countercl. ¶¶ 164–165.[12]

---

[12] The Counterclaim includes references to professional costs incurred during the evaluation of the proposed transaction.  *See, e.g.*, Am. Countercl. ¶ 42.  However, the deal costs are not actionable since the parties expressly represented in the November 2022 Term Sheet that "each party will be responsible for its own costs and expenses."  Ex. B to Fishkind Decl., at 4.  While the Term Sheet provides that Able View Inc. will bear the cost of an audit of CSS's financial statements, no such auditing expenses are alleged, which makes sense because no audit ever occurred.  *See also Sandy Valley Assocs. v. Sky Ranch Ests. Owners Ass'n*, 117 Nev. 948, 957 (2001) ("As a practical matter, attorney fees are rarely awarded as damages simply because parties have a difficult time demonstrating that the fees were proximately and necessarily caused by the actions of the opposing party and that the fees were a reasonably foreseeable consequence of the breach or conduct.")  Likewise, there is no basis for Counterclaimants to seek damages or costs

HOWARD & HOWARD ATTORNEYS PLLC

14

In trying to invent a harm, the Amended Counterclaim asserts that "upon information and belief," the information has been "further used by ABLV to create competing copies of CSS's products, depriving CSS of the ability to sell them in the Chinese market." Am. Countercl. ¶ 163.  This "upon information and belief" allegation falls far short of the exacting standards to plead damages for fraud under FRCP 9(b) as it fails to provide any actual facts that ABLV has "create[d] competing copies," let alone used them to cause damage to CSS "in the Chinese market." *Id*. Other generalized assertions stating that information ABLV had access to during negotiations "*would have allowed* ABLV to recreate some of CSS's most valuable products within China and without CSS's involvement" reveal how no actual damages are alleged because they are entirely hypothetical.  Am. Countercl. ¶ 33 (emphasis added).  In fact, nowhere does the Amended Counterclaim include any allegation that any actionable, actual damages resulted from ABLV's conduct with particularity or at all.  Rather, the only harm to CSS in the Chinese market was caused by CSS itself when it sold ABLV faulty products that were eventually exposed as such, severely impairing the ability to sell CSS products in China.

The hypothetical allegations of damages in the Amended Counterclaim falls far short. "This survey of caselaw is clear: a common-law fraudulent concealment claim requires a plaintiff to demonstrate that they either did not receive the benefit of the bargain or show out-of-pocket losses caused by the defendant's alleged misrepresentation." *Leigh-Pink v. Rio Props., LLC*, 138 Nev. 530, 535 (2022).  "[I]nstead, a corresponding showing that such concealment caused the plaintiff cognizable damages is required." *Id*. (certifying that court was correct to dismiss fraud claim because party "did not suffer any damages"); s*ee also Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485 (1998), *overruled, in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001). (establishing that the plaintiff must demonstrate that they sustained damages "*as

---

on the basis of their retention of counsel since such a remedy is only available when "due to defendant's intentional wrongful conduct, litigation is absolutely necessary to vindicate the party's rights" and "the ability to recover under the first example . . . require[es] that the resulting attorney fees arise from more than simply the costs incurred as part of 'prosecuting a breach-of-contract action.'"  *Mitchell v. Nype*, 517 P.3d 905 (Nev. 2022).  Counterclaimants fail to allege that "litigation is absolutely necessary" to "vindicate" their rights and the bulk of the claims are ineligible for a fee award as a matter of law.  And, while it is omitted from the Amended Counterclaim, ABLV agreed to cover half of CSS's legal bills following complaints from Petrillo as a gesture of good faith and expression of ABLV's desire to close the acquisition.

15

HOWARD & HOWARD ATTORNEYS PLLC

*a result of* the concealment or suppression" (emphasis added)).  Instead, a claim must be dismissed upon a failure to "sufficiently allege any physical loss or damage."  *Tao Grp. Holdings, LLC v. Emps. Ins. Co. of Wausau*, 2022 WL 705926, at *9 (D. Nev. Mar. 8, 2022), *aff'd*, 2022 WL 17102363 (9th Cir. Nov. 22, 2022).

Absent any allegations of actual damages resulting from Counterclaimants' reliance on a representation from ABLV, the claim should be dismissed.  The Amended Counterclaim fails to plead any facts involving the use of any information obtained from CSS by ABLV.  Mere speculation cannot carry the day to plead fraud with the particularity required by FRCP 9(b).

B.    The Breach of the Visitor NDA Claim Should be Dismissed.

The Amended Counterclaim fails to sufficiently allege any of the elements necessary to plead that ABLV breached the Visitor NDA.  A breach of contract claim under Nevada law requires: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."  *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011).  The claim fails on each count.

Counterclaimants assert that a former employee of ABLV named Max Shen visited CSS's facilities and executed the Visitor NDA in August 2022 that purportedly obligated him to "forever hold [CSS's] Confidential Information in strict confidence and not disclose or divulge any such Confidential Information, directly or indirectly, to any third party, or use or implement or copy or remove from [CSS's] facilities any such Confidential Information, without [CSS's] prior written consent."  Am. Countercl. ¶ 69.  No other provision of the referenced Visitor NDA is stated in the Counterclaim and the no copy of the executed Visitor NDA is filed with the Counterclaim.  The Counterclaim further alleges that Mr. Shen visited the CSS facilities and, "upon information and belief," told ABLV's Chief Financial Officer during a dinner on July 17, 2023, "that he had observed CSS's operations and would be able to replicate CSS's entire business."  *Id*. ¶¶ 76–77. In reciting the cause of action, Counterclaimants make a series of unsupported allegations "[u]pon information and belief" that ABLV has breached the Visitor NDA by "sharing and using CSS's proprietary and confidential information" and using CSS information to replicate CSS's "processes" and to "duplicate CSS's products" that are "damaging CSS's ability to operate in the

16

marketplace." *Id*. ¶¶ 112–115.

As an initial matter, ABLV does not have an executed copy of the alleged Visitor NDA that Mr. Shen purportedly signed in connection with his visit to CSS and the Counterclaim fails to properly incorporate the executed Visitor NDA in its pleading. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."); *cf. Barna v. Wells Fargo Bank, N.A.*, 2013 WL 5592201, at *2 (D. Nev. Oct. 9, 2013) (quoting *Branch*, 14 F.3d at 454) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss[.]"). Therefore, Counterclaimants have not alleged the existence of the agreement but are instead asking ABLV to defend itself based on a single quoted clause of the Visitor NDA and the Court to evaluate the claim without this necessary evidence. Counterclaimants' allegations concerning the existence of a valid agreement rely on extraneous evidence and is not properly pled as required on a motion to dismiss. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to dismiss[.]"). Counterclaimants' failure to properly incorporate the alleged executed Visitor NDA in its pleading should result in a dismissal of this cause of action.

Next, the Counterclaimants fail to allege any facts that ABLV breached the Visitor NDA. The Counterclaim merely asserts that "[u]pon information and belief" Mr. Shen said he "would be able to replicate CSS's entire business." Am. Countercl. ¶ 77. These allegations fall short of pleading facts that any breach occurred as is required to avoid dismissal of the claim. *See Miller v. Gaudreau*, 2023 WL 4826483, at *2 (D. Nev. June 7, 2023) (dismissing complaint upon failure to allege how "[defendant] broke that contract to state a claim"); *see also Gaia Ethnobotanical, LLC v. TI Payments LLC*, 2024 WL 987981, at *3 (D. Nev. Mar. 6, 2024) (dismissing breach of contract claim where the plaintiff "failed to allege *how* [the defendant] actually breached the contract") (emphasis in original).

Counterclaimants are required to allege what ABLV actually did, such as pointing to

HOWARD & HOWARD ATTORNEYS PLLC

specific unauthorized disclosures that were prohibited under the Visitor NDA as part of the breach, rather than merely alleging hypothetical action by ABLV. *See Aladdin's Eatery Sys., Inc. v. PHWLV, LLC*, 2019 WL 1317709, at *4 (D. Nev. Mar. 22, 2019) (dismissing claim where plaintiff alleged no more "than a hypothetical intent to take action that potentially breaches the [] agreement"); *Couturier v. Am. Invsco Corp.*, 2013 WL 2285050, at *3 (D. Nev. May 22, 2013) (dismissing breach of contract claim where "Plaintiffs d[id] not allege any . . .conduct that constituted breach"). Thus, the mere assertion, made "upon information and belief," that someone from ABLV said that they "would be able to replicate CSS's business" does not rise to an actual breach, which would require pleading facts that they actually used CSS's confidential information to replicate CSS's business. Am. Countercl. ¶ 77. The additional allegations that "[u]pon information and belief" that ABLV breached the Visitor NDA by "sharing and using CSS's proprietary and confidential information" in Counterclaimants' recitation of the cause of action do no better. *Id.* ¶¶ 112–114. Allegations must be based on more than information and belief and cannot survive when they fail to allege actual facts and merely parrot the language of the claim's elements. *See Tesoro Ref. & Mktg. Co., LLC v. Alanddon LLC*, 2020 WL 1549667, at *3 (D. Nev. Mar. 31, 2020) (allegation of element of tortious interference with contract based "on information and belief" constituted "a legal conclusion, not a factual allegation [and] merely restate[d] one of the elements of the tort, which is insufficient to survive a motion to dismiss"); *Kane v. Delong*, 2014 WL 900721, at *4 (N.D. Cal. Mar. 4, 2014) (dismissing breach of contract claim where "allegations are pled on information and belief, and as formulaic recitations of the cause of action" where "Plaintiffs provide no such factual information in support of its belief that the allegations are true"). These assertions are completely devoid of any alleged facts of wrongdoing so cannot support the cause of action. Thus, Counterclaimants' claim must be dismissed for the additional reason of the failure to allege a breach of the NDA.

Lastly, Counterclaimants' claim fails for the additional reason that there are no facts alleging that ABLV caused damages to Counterclaimants. Counterclaimants rely on the conclusory allegation that "CSS has suffered monetary damages caused by Ableview Enterprise Limited's breach" and other unspecified, hypothetical damages to CSS's "ability to compete in

HOWARD & HOWARD ATTORNEYS PLLC

the marketplace." Am. Countercl. ¶¶ 114–116. These allegations do not include any facts describing any loss or actual damages suffered because of any purported breach by ABLV. *See Miyayama v. Burke*, 2022 WL 1665211, at *4 (D. Nev. May 25, 2022) (dismissing claim for breach of contract that included "claims that he suffered damage in an amount 'which will be determined at the time of trial.'") (internal citations omitted); *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1235 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) (dismissing claim for breach of contract where there were only "conclusory allegations to support these purported damages"). The Court should dismiss the breach of contract claim where Counterclaimants have failed to allege facts for how any purported breach by ABLV caused damage to Counterclaimants.

### C.    The Breach of the Implied Covenant of Good Faith and Fair Dealing of the Visitor NDA Claim Should be Dismissed.

The breach of the implied covenant of good faith and fair dealing claim concerning the Visitor NDA is a mirror image of their contract claim so must be dismissed as duplicative. Under Nevada law, a "claim for breach of contract and [a] claim for breach of the covenant of good faith and fair dealing cannot be based on the same conduct; otherwise, the claims are duplicative." *1600 East Newlands Drive, LLC v. Amazon.com.NVDC, LLC*, 2019 WL 3997263, at *18 (D. Nev. Aug. 23, 2019). Moreover, "[i]t is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Darrough v. SOC LLC*, 2024 WL 3605860, at *5 (D. Nev. July 29, 2024) (citing *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019)); *see also Ortiz v. USAA Cas. Ins. Co.*, 2023 WL 6849322, at *3 (D. Nev. Oct. 17, 2023) (granting motion to dismiss implied covenant claim where complaint "use[d] the same allegations for both breach of contract and breach of the implied covenant of good faith and fair dealing").

Here, the Amended Counterclaim asserts an entirely duplicative breach and implied covenant claim. The Amended Counterclaim simply alleges that ABLV is "obtaining and using CSS's proprietary and confidential information in a manner that is unfaithful to and inconsistent with the purpose and intent of the Visitor NDA." Am. Countercl. ¶ 121. There is simply no

"new" factual allegation for this claim apart from what is included in the breach of contract count, which asserts that ABLV "shar[ed] and us[ed] CSS's proprietary and confidential information to the benefit of ABLV without CSS's consent or knowledge." *Id.* ¶ 112. Nevada courts regularly dismiss implied covenant claims that "use[] the same allegation for both breach of contract and breach of the implied covenant of good faith and fair dealing." *Stebbins*, 2019 WL 281281, at *3; *see also Darrough*, 2024 WL 3605860, at *5 ("Because plaintiffs' implied covenant claim is identical to their contract claim, it cannot survive[.]"). Therefore, the Court should dismiss the breach of the implied covenant claim for the Visitor NDA because it is duplicative of the claim for the breach of the NDA.

### D.     The Breach of the Mutual NDA Claim Should be Dismissed.

The breach of the Mutual NDA claim suffers from many of the same deficiencies as the claim for breach of the Visitor NDA claim. A breach of contract claim under Nevada law cannot survive absent allegations of "a breach by the defendant" as well as "damage as a result of the breach." *Med. Providers Fin. Corp. II*, 818 F. Supp. 2d at 1274. The Amended Counterclaim fails to allege a breach of the Mutual NDA or the existence of any actual damages resulting from any breach, so this claim should be dismissed.

The Amended Counterclaim fails to allege any facts that ABLV breached the Mutual NDA. The Amended Counterclaim provides no new allegations of breach, relying on the same assertion that that "[u]pon information and belief" Mr. Shen said he "would be able to replicate CSS's entire business." Am. Countercl. ¶ 77. These allegations do not plead facts that any breach occurred as is required to avoid dismissal. *See Miller*, 2023 WL 4826483, at *2 (dismissing complaint upon failure to allege how "[defendant] broke that contract to state a claim"); *see also Gaia Ethnobotanical, LLC*, 2024 WL 987981, at *3 (dismissing breach of contract claim where the plaintiff "failed to allege *how* [the defendant] actually breached the contract.").

The Amended Counterclaim fails to allege what ABLV did or any specific unauthorized disclosures that were prohibited under the Mutual NDA, instead relying on hypothetical and unspecified actions by ABLV. *See Aladdin's Eatery Sys., Inc.*, 2019 WL 1317709, at *4 (dismissing claim where plaintiff alleged no more "than a hypothetical intent to take action that

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

potentially breaches the [] agreement"); *Couturier*, 2013 WL 2285050, at *3 (dismissing breach of contract claim where "Plaintiffs d[id] not allege any . . . conduct that constituted breach"). Thus, the mere assertion, made "upon information and belief," that someone from ABLV said that they "would be able to replicate CSS's business" does not rise to an actual breach, which would require that they actually used CSS confidential information to replicate CSS's business. Am. Countercl. ¶ 77.  In the recitation of the cause of action, the Amended Counterclaim recycles the same vague allegations from the Visitor NDA claim that "[u]pon information and belief," ABLV breached the Mutual NDA by "sharing and using CSS's proprietary and confidential information . . .to replicate the know-how, processes, and business operations it obtained pursuant to the Mutual NDA."  *Id*. ¶¶ 127–129.   Allegations cannot rely on mere speculation "on information and belief" when they fail to allege actual facts.  *See Tesoro Ref. & Mktg. Co., LLC*, 2020 WL 1549667, at *3 (allegation of element of tortious interference with contract based "on information and belief" constituted "a legal conclusion, not a factual allegation [and] merely restate[d] one of the elements of the tort, which is insufficient to survive a motion to dismiss"); *Kane*, 2014 WL 900721, at *4 (dismissing breach of contract claim where "allegations are pled on information and belief, and as formulaic recitations of the cause of action" where "Plaintiffs provide no such factual information in support of its belief that the allegations are true").  The Amended Counterclaims' assertions are completely devoid of any alleged facts of wrongdoing so cannot support the cause of action.  Thus, the claim for breach of the Mutual NDA must be dismissed due to the failure to allege a breach of the NDA.

The breach of contract claim also fails because it lacks facts alleging that ABLV caused damages resulting from any breach.  Once again, the Amended Counterclaim relies on the conclusory and recycled allegations that "Petrillo has suffered monetary damages caused by Ableview Enterprise Limited's breach" and harm for Petrillo's "ability to compete in the marketplace."  Am. Countercl. ¶¶ 129–131.  These allegations fail because they lack any facts describing any loss or actual damages suffered because of any purported breach by ABLV.  *See Miyayama*, 2022 WL 1665211, at *4 (dismissing claim for breach of contract that included "claims that he suffered damage in an amount 'which will be determined at the time of trial.'")

1  (internal citations omitted); *Pruchnicki*, 439 F. Supp. 3d 1226, 1235, *aff'd*, 845 F. App'x 613 (9th

2  Cir. 2021) (dismissing claim for breach of contract where there were only "conclusory allegations

3  to support these purported damages").  The Court should dismiss the breach of contract claim

4  where the Amended Counterclaim does not include any alleged facts for how any purported

5  breach by ABLV caused damage to Counterclaimants.

6

7      E.    The Breach of the Implied Covenant of Good Faith and Fair Dealing for the
             Mutual NDA Claim Should be Dismissed.

8          As discussed, *supra* at Argument.C, Nevada law rejects duplicative claims for breach of

9  contract and breach of the covenant of good faith and fair dealing.  *See 1600 East Newlands Drive,*

10  *LLC*, 2019 WL 3997263, at *18; *see also Darrough*, 2024 WL 3605860, at *5.  Just as was the

11  case with the claims based on the Visitor NDA, the Amended Counterclaim asserts duplicative

12  claims for the Mutual NDA claims.  The Amended Counterclaim simply alleges that ABLV is

13  "obtaining and using CSS's proprietary and confidential information in a manner that is unfaithful

14  to and inconsistent with the purpose and intent of the Mutual NDA." Am. Countercl. ¶ 136.  There

15  is no "new" factual allegation for this claim beyond what is included in the breach of contract

16  count, which asserts that ABLV "shar[ed] and us[ed] CSS's proprietary and confidential

17  information to the benefit of ABLV without CSS's consent or knowledge." *Id*. ¶ 127.  Nevada

18  courts regularly dismiss implied covenant claims that "use[] the same allegation for both breach

19  of contract and breach of the implied covenant of good faith and fair dealing." *Stebbins*, 2019

20  WL 281281, at *3; *see also Darrough*, 2024 WL 3605860, at *5 ("Because plaintiffs' implied

21  covenant claim is identical to their contract claim, it cannot survive[.]").  Therefore, the Court

22  should dismiss the breach of the implied covenant claim for the Mutual NDA because it is

23  duplicative of the claim for the breach of the Mutual NDA.

24      F.    The Breach of the Distribution Agreement Claim Should be Dismissed.

25          "If there is anything well settled, it is that the party who commits the first breach of a

26  contract cannot maintain an action against the other for a subsequent failure to perform." *Bradley*

27  *v. Nevada-California-Oregon Ry.*, 42 Nev. 411, 178 P. 906, 908 (1919).  Here, as explained in

28  greater detail in the Complaint and as conceded in the Amended Counterclaim (acknowledging

HOWARD & HOWARD ATTORNEYS PLLC

22

that ingredient supplier informed CSS that it was manufacturing products without Olive Leaf Extract, *see* Am. Countercl. ¶ 82), Counterclaimants failed to provide ABLV with Supreme Olive Serum that included the Olive Leaf Extract ingredients.  The prior failures of Counterclaimants, stemming from misrepresentations by Petrillo before and during the term of the Distribution Agreement, went to the heart of the contract serve as a complete defense to any subsequent claim of breach by Counterclaimants so should be dismissed.  *See Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1194 (D. Nev. 2006), *aff'd*, 583 F.3d 1232 (9th Cir. 2009) (granting motion to dismiss cause of action for breach of contract in counterclaim based on a "subsequent alleged failure").  The Court should dismiss the claim for breach of the Distribution Agreement accordingly.

### G.     The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim for the Distribution Agreement Should be Dismissed.

As discussed, *supra* at Argument.C, Nevada law rejects duplicative claims for breach of contract and breach of the covenant of good faith and fair dealing.  *See 1600 East Newlands Drive, LLC*, 2019 WL 3997263, at *18.  The Amended Counterclaim, once again, relies on duplicative, conclusory allegations for their breach of the implied covenant claim to their breach of contract claim for the Distribution Agreement.  The Amended Counterclaim simply asserts that ABLV "breached its duty of good faith and fair dealing to CSS by acting in a matter that is unfaithful to the purpose of the Distribution Agreement" as it relates to the same "obligations" that make up the basis of the breach of contract claim.  Am. Countercl. ¶ 107.  Lacking any distinct factual allegations, this Court should dismiss the implied covenant claim that relies on "the same allegation for both breach of contract and breach of the implied covenant of good faith and fair dealing."  *Stebbins*, 2019 WL 281281, at *3; *see also Darrough*, 2024 WL 3605860, at *5 ("Because plaintiffs' implied covenant claim is identical to their contract claim, it cannot survive[.]").  Therefore, the Court should dismiss the breach of the implied covenant claim for the Distribution Agreement because it is duplicative of the claim for the breach of the Distribution Agreement.

///

HOWARD & HOWARD ATTORNEYS PLLC

1

H.    The Unjust Enrichment Claim Should be Dismissed.

2    The Amended Counterclaim fails to include any pleaded facts in support of the unjust

3    enrichment claim.  "In Nevada, the elements of an unjust enrichment claim or 'quasi contract'

4    are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the

5    defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances

6    where it would be inequitable to retain the benefit without payment."  *Kennedy v. Carriage*

7    *Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010).  The sole, unique allegations

8    relied upon by the Amended Counterclaim for the unjust enrichment claim is that "[u]pon

9    information and belief, ABLV continues to sell in the marketplace the Supreme Olive Serum it

10    deems defective." Am. Countercl. ¶ 142. These allegations are completely unsupported so cannot

11    survive. *See Tesoro Ref. & Mktg. Co., LLC*, 2020 WL 1549667, at *3 (allegation of element of

12    tortious interference with contract based "on information and belief" constituted "a legal

13    conclusion, not a factual allegation [and] merely restate[d] one of the elements of the tort, which

14    is insufficient to survive a motion to dismiss").    The other assertions in the Amended

15    Counterclaim merely parrot the language of the claim's elements. *See id*. ¶ 141 ("ABLV has been

16    unjustly enriched to the detriment of Counterclaimants[.]"); *id*. ¶ 143 ("ABLV has appreciated,

17    accepted, received, retained, and benefitted from Counterclaimant's products in a manner that

18    would render it inequitable for ABLV to retain the benefits[.]"); *id*. ¶ 144 ("As a direct and

19    proximate result of ABLV's actions, Counterclaimants have suffered damages, and ABLV has

20    been unjustly enriched[.]").  Likewise, unsupported allegations made as formulaic recitations of

21    the cause of action" where "[Counterclaimants] provide no such factual information in support of

22    its belief that the allegations are true" cannot serve as the basis for the cause of action. *Kane*,

23    2014 WL 900721, at *4.  Thus, the Court should dismiss the unjust enrichment claim.

24    ///

25    ///

26    ///

27    ///

28    ///

HOWARD & HOWARD ATTORNEYS PLLC

24

1

## **CONCLUSION**

2      For the reasons set forth above, it is respectfully requested that the Motion be GRANTED

3  and judgment of dismissal of the First Amended Counterclaim be entered with prejudice, and for

4  such other and further relief as deemed just and appropriate.

5      Dated: December 2, 2024                WINSTON & STRAWN LLP

6                                              By: */s/ Luke A. Connelly*
7                                              Luke A. Connelly, Esq.
                                               (Admitted *pro hac vice*)
8                                              Peter Fishkind, Esq.
                                               (Admitted *pro hac vice*)
9                                              200 Park Avenue
                                               New York, NY 10166-4193
10                                             Telephone: (212) 294-6700
                                               Email: lconnelly@winston.com
11                                             Email: pfishkind@winston.com

12                                             WINSTON & STRAWN LLP
                                               Ya-Chiao Chang
13                                             (Admitted *pro hac vice*)
                                               Jin Mao Building, 28th Floor
14                                             88 Century Avenue
                                               Shanghai 200121, China
15                                             Telephone: +86-21-2208-2628
                                               Email: ychang@winston.com
16

17                                             HOWARD & HOWARD ATTORNEYS PLLC

18                                             By: */s/ Jonathan W. Fountain*
                                               W. West Allen, Esq.
19                                             Nevada Bar No. 5566
                                               Jonathan W. Fountain, Esq.
20                                             Nevada Bar No. 10351
                                               3800 Howard Hughes Parkway, Suite 1000
21                                             Las Vegas, Nevada 89169
                                               Telephone: (702) 257-1483
22                                             Email: wwa@h2law.com
                                               Email: jwf@h2law.com
23

24                                             *Attorneys for Plaintiffs and Counterclaim*
                                               *Defendants AbleView Enterprise Limited and*
25                                             *AbleView Brands Limited*

26

27

28

25