1

2           UNITED STATES DISTRICT COURT

3               DISTRICT OF NEVADA

4

5  ABLEVIEW ENTERPRISE LIMITED, et          Case No. 3:24-cv-00409-ART-CSD
   al.,
6                                          **ORDER ON MOTION TO DISMISS
          Plaintiffs / Counter-Defendants,      COUNTERCLAIMS**

7  v.                                          (ECF No. 30)

8  JONATHAN PETRILLO; COSMETIC
   SKIN SOLUTIONS, LLC,
9
          Defendants / Counterclaimants.
10

11         This case concerns cross allegations of fraud and breach of contract

12  between a Nevada-based cosmetics manufacturer, Cosmetic Skin Solutions

13  ("CSS"), and its distributor in China, AbleView ("ABLV"). Plaintiff/Counter-

14  Defendant ABLV sued Defendants/Counterclaimants CSS and its owner

15  Jonathan Petrillo ("Petrillo") for allegedly supplying ABLV with an olive-leaf-based

16  skincare product that contains no olive leaf. Petrillo and CSS counterclaimed that

17  ABLV strung CSS along to steal confidential information, including the formulas

18  for its products. Before the Court is ABLV's motion to dismiss CSS and Petrillo's

19  First Amended Counterclaim, which alleges breach of three contracts, unjust

20  enrichment, and fraud. (ECF No. 30.) The Court grants ABLV's motion in part

21  and denies it in part.

22     **I.     BACKGROUND**

23         ABLV is a cosmetics distributor in China associated with at least three

24  companies: AbleView Enterprise Limited and AbleView Brands Limited, both

25  located in China, and Able View Inc., a Cayman Islands Corporation (together

26  "ABLV"). (ECF No. 27 at 2.) CSS is a cosmetics producer based in Nevada, and its

27  controlling officer Jonathan Petrillo is a Nevada resident (together

28  "Counterclaimants"). (*Id.*)

Counterclaimants allege that ABLV falsely promised that it wanted to acquire CSS, drew out the acquisition process for over three years, stole CSS's product and financial information, then sold copies of CSS's products in China.

### A. ABLV Says it Will Buy CSS; CSS Gives ABLV Sensitive Information.

In 2020, ABLV contacted Counterclaimants about selling their cosmetics in China. (*Id.* at 3.) They entered a Distribution Agreement that year that required ABLV to make minimum purchases from CSS in exchange for granting ABLV exclusive rights to distribute CSS's products. (*Id.*) The parties renewed this agreement in 2023. (*Id.* at 4.)

Between 2021 and 2024, both ABLV and CSS acted as if ABLV was planning to acquire CSS. In 2021, ABLV told Counterclaimants that it wanted to acquire CSS in full. ABLV's Chief Financial Officer Dennis Tang emailed Counterclaimants with a draft agreement. (*Id.* at 5–6.) Both companies purchased accounting and legal services to prepare for the acquisition. (*Id.*) Despite saying that it wished to complete the deal quickly, ABLV delayed acquisition over the next three years. (*Id.* at 5–10.)

In 2022 and 2023, ABLV employee Max Shen visited CSS's facility for several months. He signed a Visitor Confidentiality and Non-Disclosure Agreement in 2022 ("Visitor NDA"). (*Id.* at 12.) Months after Shen signed the Visitor NDA, other ABLV representatives signed a Mutual Confidentiality Agreement ("Mutual NDA") with similar terms. (*Id.*) The two NDAs required Shen and ABLV to hold CSS's confidential information in strict confidence and not to "use or implement or copy . . . any such" information without CSS's consent. (*Id.* at 12.)

In 2023, at the Atlantis Casino in Reno, Tang, Shen, Petrillo, and Petrillo's mother, among others, went to dinner. Petrillo's mother, "who possesses familiarity with spoken Mandarin Chinese," "heard Max Shen telling Dennis Tang

in Mandarin that he had observed CSS's operations and would be able to replicate CSS's entire business." (*Id.* at 13.)

Until 2024, CSS and ABLV continued negotiating ABLV's acquisition of CSS. (*Id.*) During this time, CSS gave ABLV its financial information, formulas for CSS's products—including its Supreme Olive Serum, Supreme Phyto+ Gel, and Copper Peptide Serum. (*Id.* at 6–10.) While requesting additional proprietary information, Tang continued telling Counterclaimants that ABLV wanted to close the acquisition. (*Id.* at 7.)

**B. ABLV Terminates CSS's Distribution Agreement.**

In 2024, a social-media influencer said that CSS's Supreme Olive Serum did not contain olive-leaf extract. (ECF No. 27 at 14.) After a short period of negotiations and rejected offers, ABLV wrote to Petrillo that it would "not continue our relationship with you and your company and cease our partnership." (*Id.* at 15.)

Counterclaimants allege that the Distribution Agreement requires that a breaching party be given a thirty-day period for notice and cure before the non-breaching party may terminate the agreement. (*Id.*) Counterclaimants further allege that ABLV breached the Distribution Agreement by failing to make its minimum purchase after sending the allegedly improper termination notice. (*Id.*)

**C. ABLV Possibly Sells Knock-Off CSS Products in China.**

Counterclaimants allege that ABLV used the business and product information from Shen's visits to sell its own version of CSS's products in China. (ECF No. 27 at 22–29.) Additionally, CSS alleges that ABLV continues to sell CSS's Supreme Olive Serum, even though it is currently suing CSS for its alleged defects. (*Id.* at 22.)

**II.    PROCEDURAL HISTORY**

ABLV sued CSS and Petrillo for fraud and unjust enrichment based on the defective olive serum. (ECF No. 1.)

CSS and Petrillo counterclaimed that ABLV breached the distribution agreement (Count 1) and Visitor NDA (Count 3), or, in the alternative, that ABLV breached the implied covenant of good faith and fair dealing in each NDA (Counts 2, 4). (ECF No. 27 at 16–18.) Petrillo himself further alleges that ABLV breached the mutual NDA or the implied covenant of good faith and fair dealing in that contract (Counts 5, 6). (*Id.* at 19–20.) Counterclaimants together allege unjust enrichment (Count 7) and fraudulent misrepresentation (Count 8) against ABLV. (*Id.* at 21–27.)

### III.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678–79.

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." This particularity standard requires alleging "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir.

2016) (cleaned up). Allegations under Rule 9(b) must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*

## IV.   DISCUSSION

ABLV moves to dismiss the counterclaims for breach of the Distribution Agreement, breach of the two NDAs, unjust enrichment, and fraud.

### A. Express Breach Claims (Counts 1, 3, 5)

ABLV argues that Counterclaimants have failed to allege any express or implied breach claims based on the Distribution Agreement, Visitor NDA, or Mutual NDA.

To state a claim for breach of contract, a party must allege that a contract exists, that the person sued breached the contract, and that the party suffered damages as a result of the breach. *See Med. Providers Fin. Corp. II v. New Life Centers, LLC*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011).

### 1. Distribution Agreement (Count 1)

ABLV argues that Counterclaimants' claim for breach of the Distribution Agreement must be dismissed because Counterclaimants materially breached the Distribution Agreement by allegedly failing to provide ABLV with Supreme Olive Serum that contained olive leaf. At the motion to dismiss stage, a district court accepts as true all well-pleaded factual allegations in the counterclaim and determines whether those factual allegations state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678–79. In arguing that Counterclaimants materially breached the Distribution Agreement first, ABLV asks the Court to assume the truth of allegations in its own Complaint, which Counterclaimants' Answer denies. (*See* ECF Nos. 1, 17.) The First Amended Counterclaim does not allege that Counterclaimants made misrepresentations or materially breached the contract. Accordingly, the Court cannot assume that ABLV's allegations are true, and it

1    must reject this argument.

2    **2. Visitor and Mutual NDA (Counts 3, 5)**

3         ABLV first argues that Counterclaimants have not adequately alleged that

4    Max Shen or ABLV breached the NDAs because they did not attach the NDAs

5    with their Counterclaim. ABLV further argues that Counterclaimants are asking

6    "the Court to evaluate the claim without this necessary evidence," citing the

7    doctrine of incorporation by reference. (ECF No. 30 at 18.)

8         The doctrine of incorporation by reference only applies when a party

9    attaches evidence to a complaint or responsive pleading—it does not impose a

10    requirement for parties to attach evidence to complaints. *See Davis v. HSBC Bank*

11    *Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (describing incorporation by

12    reference doctrine) ("district court may, but is not required to incorporate

13    documents by reference").  At the motion to dismiss stage under Rule 8, all a

14    party must plead is "factual content that allows the court to draw the reasonable

15    inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

16    at 678. Counterclaimants are not required to attach the contracts to their

17    allegations.

18         ABLV next argues that Counterclaimants have not alleged that Shen

19    breached either the Visitor or Mutual NDA. Counterclaimants allege that both

20    NDAs required Shen and ABLV not to use, implement, or copy CSS's confidential

21    information. Counterclaimants allege that ABLV's employee Shen learned of

22    several proprietary processes and business practices over several months of

23    observing CSS's production. Counterclaimants further allege that Shen told

24    ABLV's CFO Tang that he would be able to replicate Counterclaimants' business

25    in full. Counterclaimants allege that after this, ABLV started selling its own

26    version of CSS's products in China. Making inferences in favor of the non-moving

27    party, these allegations suggest that Shen copied CSS's confidential information

28    to ABLV, and ABLV used or implemented that information.

ABLV next argues that Counterclaimants' allegations of damages for its NDA breach claims based on information and belief are conclusory. A party may plead facts on information and belief "where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Counterclaimants alleged on information and belief that ABLV is using its formulas and business information to sell copies of Counterclaimants' products in China. This is a sufficient allegation of damages.

Viewed in the light most favorable to Counterclaimants, these allegations sufficiently state a claim that Shen and ABLV breached the NDAs.

## B. Implied Covenant Claims (Counts 2, 4, 6)

ABLV argues that all of Counterclaimants' implied covenant claims use the same allegations as their express breach claims.

The implied covenant applies when one party literally complies with the terms of a contract but deliberately violates the contract's intention and spirit. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). A claim for breach of the implied covenant "may not be plead as an alternative theory of liability when based on the same allegations as [express] breach of contract." *Darrough v. SOC LLC*, No. 2:20-CV-01951-CDS-BNW, 2024 WL 3605860, at *5 (D. Nev. July 29, 2024) (quoting *Stebbins v. Geico Ins. Agency*, No. 2:18-cv-00590-APG-GWF, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019)). An implied covenant claim that uses the same theory as that party's claim for express breach is subject to dismissal. *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs. LLC*, No. 2:20-CV-01470-CDS-NJK, 2025 WL 1745744, at *22 (D. Nev. June 24, 2025) (dismissing a party's implied covenant claim that for being "nothing more than a repackaging of its contract claim").

Counterclaimants' implied covenant claim for the Distribution Agreement states that ABLV was unfaithful "with respect to its obligations to timely provide

required notices in the manner specified in the Distribution Agreement." (ECF No. 27 at 17.) It then describes other ways in which ABLV did not carry out obligations "required by the Distribution Agreement." (*Id.*) Similarly, both counts of violation of the implied covenant of the NDAs describe "obtaining and using CSS's proprietary and confidential information." (*Id.* at 19, 21.) The claims for express breach for both contracts are that ABLV used, implemented, copied, or removed confidential information from CSS. In so many words, each of these claims re-alleges express breach. The Court dismisses these claims (Counts 2, 4, 6) without prejudice and with leave to amend within thirty days of entry of this order.

### C. Unjust Enrichment (Count 7)

ABLV argues that Counterclaimants' allegations of unjust enrichment are conclusory. Unjust enrichment exists when one party "confers a benefit on the [other], the [other] appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (citing *Unionamerica Mtg. v. McDonald,* 626 P.2d 1272, 1273 (Nev. 1981)) (internal citations and quotations omitted). Counterclaimants alleged that ABLV is continuing to profit from selling Counterclaimants' products despite suing Counterclaimants for the value of those products in its complaint. This allegation is not conclusory, and the Court denies ABLV's argument.

### D. Fraudulent Misrepresentation (Count 8)

ABLV seeks to dismiss Counterclaimants' fraud claim on several grounds. ABLV argues that Counterclaimants do not state which allegations of fraud should be attributed to which ABLV parties, that they have not pled any false statement of material fact made by ABLV, that they have not pled justifiable reliance, and they have not pled damages resulting from the fraud.

8

In Nevada, fraudulent misrepresentation requires showing "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021). Fraudulent misrepresentation also applies to a representation that is "misleading because it partially suppresses or conceals information." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (emphasis removed) (quoting *Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803 (Nev. 1986)).

### 1. Specificity of Parties' Roles in a Fraudulent Scheme

The ABLV parties argue that Counterclaimants do not state which allegations of fraud should be attributed to which ABLV parties and therefore have not pled fraud with sufficient specificity. Counterclaimants respond that only the ABLV parties possess such information.

Under Rule 9, pleadings are "not required to allege facts that are peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) (internal citations and quotations omitted). A party alleging corporate fraud may "plead the facts on which the belief is founded and include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *See MST Mgmt., LLC v. Chi. Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 931 (D. Nev. 2022) (internal citations omitted).

Counterclaimants have sufficiently pled the roles of the ABLV parties under Rule 9. Counterclaimants alleged that ABLV, through Dennis Tang and Max Shen, requested CSS's product formulas and business information for the stated purpose of preparing to purchase CSS. Counterclaimants alleged that Tang and

Shen then used that information to prepare their own versions of CSS's products. Counterclaimants alleged that Petrillo's mother heard Shen tell Tang in Mandarin that "he had observed CSS's operations and would be able to replicate [its] entire business." Counterclaimants alleged that ABLV prolonged the closing date for the proposed acquisition to extract valuable information from CSS. Making all reasonable inferences in favor of the non-moving party, these allegations suffice for pre-discovery allegations of corporate fraud.

### 2. Specific Misrepresentations and Reliance

ABLV argues that Counterclaimants have not pled that any specific false statement of material fact made by ABLV. Counterclaimants respond that they instead show statements that ABLV meant to string Counterclaimants along through promises to buy CSS.

Fraudulent misrepresentation includes representations that are misleading because they partially suppress or conceal information. *Matsugishi v. Chen*, No. 2:24-CV-01840-JAD-MDC, 2025 WL 1506306, at *6 (D. Nev. May 23, 2025) (citing *Blanchard*, 839 P.2d at 1322) (party adequately pled fraud based on a material omission). Counterclaimants allege that ABLV made promises about acquiring CSS that ABLV never intended to act upon, and that ABLV instead represented its interest in acquiring CSS to take its valuable commercial information. This allegation suffices to plead that ABLV's omissions constitute misrepresentation.

ABLV next argues that the various agreements it executed about acquiring CSS were explicitly non-binding. They cite cases where courts have held that allowing such agreements to constitute a promise would "allow every breach of contract to support a claim of fraud" if the allegation also includes an allegation that the other side never intended to keep its promise. *See, e.g., Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153–54 (S.D. Cal. 2001) (cleaned up). CSS's pleading is distinguishable because they include a plausible allegation of why

ABLV misrepresented its intent to acquire CSS from the beginning: ABLV sought to steal CSS's valuable information.

### 3. CSS's Reliance on ABLV's Representations

ABLV argues that Counterclaimants have not pled that they justifiably relied on any of ABLV's misrepresentations. Counterclaimants respond that because they were already doing business with ABLV, they had no basis to believe that ABLV would attempt to steal valuable commercial information.

Nevada law prohibits fraud claims by parties that have "relied on [their] own judgment and not on the [opponent's] representations." *See Epperson*, 719 P.2d at 803. A party with capacity to independently investigate a transaction or rely on expert assistance may allege reliance on a misrepresentation by showing that the other party "has superior knowledge about the matter in issue." *See Blanchard*, 839 P.2d at 1323 (quoting *Epperson*, 719 P.2d at 803). While a person may not ignore "a danger signal and a red light to any normal person of [such] intelligence and experience," there is no duty to investigate absent facts that reliance on a representation is unreasonable. *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987) (citing *Besett v. Basnett*, 389 So.2d 995, 998 (Fla. 1980)) ("'Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter.'").

ABLV points to Counterclaimants' sophistication to show that they have not adequately pled reliance. Counterclaimants were represented by counsel when dealing with ABLV and had the capacity to understand the non-binding agreements regarding ABLV's purchase of CSS that they entered. ABLV further argues that the difficulties and delays that Counterclaimants encountered while trying to reach a deal with ABLV should have raised doubts about whether the deal would take place. Counterclaimants respond that because of their ongoing distribution relationship with ABLV, they did not expect ABLV to attempt to steal their commercial information, and Counterclaimants took ABLV's continued

representations that they were moving forward with the deal at face value. Viewed in the light most favorable to Counterclaimants, these allegations suffice to show that they relied on ABLV's statements. Additionally, the question of whether reliance was reasonable is fact-intensive and should not be resolved at the motion to dismiss stage. *See Blanchard*, 839 P.2d at 1323 (citation omitted) (whether a party had a basis to know the truth despite a misrepresentation presents a question of fact).

### 4. Specificity of Damages

ABLV argues that Counterclaimants' allegation on information and belief that ABLV is selling copies of CSS's products lacks sufficient specificity under Rule 9. Counterclaimants respond that they are not obligated to allege damages with specificity.

Counterclaimants have sufficiently alleged damages. Under Rule 9, "facts that are peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded." *Nayab*, 942 F.3d at 493–94. Counterclaimants allege that ABLV employees Tang and Shen discussed being able to replicate CSS's business after Shen observed its internal operations. Additionally, ABLV exclusively sells in China, which makes it difficult for Counterclaimants to know exactly what ABLV is selling. These are enough facts for Counterclaimants information-and-belief allegations to suffice.

### V.    CONCLUSION

Accordingly, the Court grants ABLV's motion to dismiss in part and denies it in part. (ECF No. 30.) Counterclaimants' claims for breach of the implied covenant of good faith and fair dealing (Counts 2, 4, 6) are dismissed without prejudice and with leave to amend within thirty days of entry of this order. The Court denies ABLV's motion to dismiss for all other claims.

DATED: August 21, 2025

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE