**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ABLEVIEW ENTERPRISE LIMITED and ABLEVIEW BRANDS LIMITED,

Plaintiffs

v.

JONATHAN PETRILLO and COSMETIC SKIN SOLUTIONS LLC,

Defendants

JONATHAN PETRILLO and COSMETIC SKIN SOLUTIONS LLC,

Counterclaimants

v.

ABLEVIEW ENTERPRISE LIMITED, ABLEVIEW BRANDS LIMITED and ABLEVIEW INC.,

Counter-Defendants

Case No.: 3:24-cv-00409-ART-CSD

**Order**

Re: ECF No. 117/119

Defendants/Counterclaimants Jonathan Petrillo and Cosmetic Skin Solutions, LLC (hereinafter, CSS) move for leave to file a third amended counterclaim. (ECF Nos. 117, 118, 118-1 to 118-15; unredacted sealed version at ECF Nos. 119, 120-1 to 120-15.) Plaintiffs/Counter-Defendants Ableview Enterprise Limited, Ableview Brands Limited and Ableview, Inc. (hereinafter, Ableview) filed a response. (ECF Nos. 132, 132-1 to 132-11.) CSS filed a reply. (ECF Nos. 134, 135-1 to 135-7.)

## I. BACKGROUND

Ableview markets and distributes specialty cosmetic products in China. It learned of CSS' success in the Chinese market selling CSS' Supreme Olive Serum, which Ableview alleges was advertised to contain olive leaf extract. The complaint alleges that olive leaf extract "is a potent source of antioxidants that support your immune system," and provides skincare and other health benefits, and olive leaf extract is especially popular within the Chinese market. Ableview reached out to CSS to form a business relationship to distribute CSS' products containing olive leaf extract in China. Ableview entered into a distribution agreement with CSS in 2020 to purchase products manufactured and supplied by CSS for distribution in China, including the Supreme Olive Serum and other products containing olive leaf extract.

Ableview contends, however, that CSS never intended to manufacture products with olive leaf extract, and instead knowingly supplied products without this key ingredient. The complaint avers that in February 2024, a prominent Chinese influencer known as "Biao" posted on social media that products purchased from CSS did not contain olive leaf extract and accused Ableview of falsely advertising products to Chinese consumers. As a result, Ableview claims there was massive consumer backlash and it was unable to sell millions of dollars of products purchased from CSS. Ableview asserts that subsequent lab analysis in March 2024 revealed that none of the products supplied by CSS ever had olive leaf extract. Ableview contends that CSS received ingredient lists from the raw materials supplier revealing olive leaf extract was not included in the raw materials that CSS was purchasing. It further avers that CSS knew it was selling Supreme Olive Serum, stating that it contained olive leaf extract, when it did not in fact contain olive leaf extract. (ECF No. 1.)

CSS filed an answer and counterclaim. The counterclaim alleges that CSS purchased its olive leaf extract in the form of "Actiphyte Italian Olive GL." In 2021, it sought to change its olive leaf extract supplier, but Ableview asserted that CSS could not change its supplier. In March 2022, CSS began experiencing challenges in timely receiving olive leaf extract used in the Supreme Olive Serum, because there was a shortage necessary to meet Ableview's demand. Ableview ultimately agreed CSS could change suppliers of the olive leaf extract. CSS alleges Ableview agreed to not hold CSS liable for any causes of harm which may result from the changes to the Supreme Olive Serum formula.

The counterclaim further alleges that Ableview's director, Max Shen, visited CSS, and signed a visitor confidentiality and non-disclosure agreement where he was required to forever hold CSS' confidential information in strict confidence. During several visits to CSS, Shen gained access to CSS' proprietary and confidential business information.

In February 2024, CSS discovered a social media influencer accused the Supreme Olive Serum of not containing olive leaf extract. Counterclaimants aver that its agreement with Ableview did not require it to independently test or analyze the raw materials received for its products, including the olive leaf extract. Instead, CSS relied on certificates of analysis it received from the distributors. CSS maintains it was not aware of any issue with the Supreme Olive Serum, but immediately contacted their distributor and sought a more thorough breakdown of the ingredients in the "Actiphyte Italian Olive GL," but never got a direct response. CSS offered Ableview a credit or replacement value for the Supreme Olive Serum upon Ableview returning the previously purchased inventory. Ableview refused this offer. CSS asserts that Ableview did not comply with the distribution agreement term regarding termination of the agreement. CSS further contends Ableview materially breached the agreement and failed to pay

the invoice despite receiving and retaining the products, and failed to satisfy its monthly minimum product purchase requirements. (ECF No. 17.)

CSS subsequently sought and was granted leave to amend the counterclaim. (ECF Nos. 21 and 22.) The original scheduling order set the deadline to amend pleadings as January 2, 2025, and the close of discovery for April 2, 2025. (ECF No. 24.)

The amended counterclaim includes additional allegations that beginning in March 2021, Ableview began a years-long process of proposing the potential acquisition of CSS. Relying on representations made by Ableview, CSS asserts it incurred hundreds of thousands of dollars of professional fees related to the proposed acquisition, which was never consummated. During this time, CSS avers that Ableview gained CSS' valuable proprietary and confidential information. CSS alleges that Ableview sent various emails to CSS in 2022 requesting verification of CSS' product formulations and products, including testing results, and indicated that Ableview would conduct testing for the stability, microbiology, and physical and chemical aspects of three CSS products, including the Supreme Olive Serum. CSS alleges Ableview never intended to actually acquire CSS, but desired to obtain confidential information to replicate CSS' products. (ECF No. 27.)

Ableview filed a motion to dismiss the amended counterclaim on December 2, 2024. (ECF No. 30.)

The scheduling order deadlines were extended by stipulation several times.

Ableview then amended its complaint by stipulation. (ECF Nos. 56, 57, 58, 59.) The amended complaint continues to allege that CSS promised it would supply Ableview with cosmetic products with olive leaf extract, but never intended to do so, and knowingly supplied products without this key ingredient. Ableview avers that Petrillo was told by CSS's supplier in

October 2019 that the olive extract used in CSS' products was actually a derivative of olive *fruit*, not olive *leaf*, but never advised Ableview of this development. (ECF No. 59.)

District Judge Du granted in part and denied in part the motion to dismiss the amended counterclaim. (ECF No. 55.) The counterclaims for breach of the implied covenant of good faith and fair dealing in Counts 2, 4 and 6 were dismissed with leave to amend. (ECF No. 55.)

The scheduling order deadlines were extended by stipulation again, with discovery extended to December 5, 2025. (ECF No. 61.)

The second amended counterclaim was filed on September 22, 2025. It reiterates the allegations regarding the distribution agreement and the negotiations for Ableview to acquire CSS. (ECF No. 63.)

The parties then stipulated to continue the scheduling order deadlines, extending discovery to January 23, 2026. (ECF No. 78.) Two of reasons for requesting the extension were difficulty scheduling depositions and significant work required in connection with producing documents in China. (ECF No. 78.)

Current counsel for CSS substituted into the case on December 11, 2025. (ECF No. 83.)

At a December 26, 2025 hearing on Ableview's discovery motion, the court extended discovery to April 23, 2026. (ECF No. 88, 91.)

CSS then filed a motion to compel responses to requests for production. (ECF No. 93.) At a hearing on February 17, 2026, the court granted the motion in part, and allowed CSS to serve 15 additional requests for production. (ECF No. 97.)

On May 29, 2026, this motion to amend the counterclaim was filed. CSS contends that in the weeks before the discovery cutoff it discovered critical facts from Ableview in response to the requests for production and subsequent deposition testimony from Ableview which justifies

the amendment. CSS argues that amendment is proper under Federal Rule of Civil Procedure 15, and that they have shown good cause as well as excusable neglect as they seek to amend after the deadline to amend pleadings has expired.

Ableview opposes the motion, arguing it is an untimely attempt to amend after the close of fact discovery and well after the deadline to amend pleadings, and after the opportunity to investigate the new allegations has passed. Ableview contends CSS was not diligent in pursuing discovery. Ableview further claims that allowing the amendment would add false allegations. Ableview also asserts that CSS has known about the "new" facts for years, and to the extent the facts are new, Ableview argues they were in response to CSS' belated discovery requests. Ableview further contends that amendment would be prejudicial, because CSS is using the amendment to erase key admissions from their operative pleading.

## III. STANDARD

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2). Here, there is no doubt Counterclaimants were required to seek leave to amend.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

Where a motion for leave to amend is filed after entry of the Rule 16 scheduling order deadline, the movant cannot "appeal to the liberal amendment procedures afforded by Rule 15." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Instead, the movant must "satisfy the *more stringent* 'good cause' showing required under Rule 16." *Id.* (emphasis original). "Unlike Rule 15(a)'s liberal amendment policy …, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). While Rule 16 does not require a showing of prejudice, the court may consider whether prejudice would result to the party opposing amendment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000).

Local Rule 26-3 further provides that a request to extend a deadline set forth in a discovery plan made after expiration of the deadline will not be granted unless the moving party also demonstrates the failure to act was the result of excusable neglect. LR 26-3; *see also* Fed. R. Civ. P. 6(b)(1)(B). When considering excusable neglect, the court examines four factors: "(1) danger of prejudice to the opposing party; (2) length of delay and its potential impact on proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (citation and quotation marks omitted); *see also Pioneer Investment Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

## III. DISCUSSION

As a preliminary matter, Ableview argues that CSS' motion should be denied because it fails to apply the correct legal standard. Although CSS' motion discusses Rule 15 and cites Local Rule 26-4 rather than Local Rule 26-3, it addresses both good cause as well as excusable neglect. The court therefore declines to deny the motion on this basis.

Ableview next contends CSS' motion should be denied because CSS' own lack of diligence in pursuing discovery caused undue delay in seeking amendment and the proposed amendment would result in further delay.

The record reflects a lack of diligence by both sides in pursuing discovery. As is relevant to this motion, however, Ableview did not initially produce internal or third-party communications in connection with their production of documents and the court permitted CSS to serve 15 additional requests for production after new defense counsel entered into the case. Ableview then produced a significant amount of responsive documents (over 28,000 pages) roughly a month before the discovery cutoff. To allow CSS time to review those materials, Ableview's witnesses' depositions were continued until the end of the discovery deadline. CSS filed this motion roughly a month after those depositions, during which time CSS was still awaiting the production of additional responsive documents, including audio transcripts.

CSS identifies various categories of new information that were disclosed in Ableview's document production and in the depositions of Ableview's witnesses, including:

(1) Ableview lacked the funds necessary to complete the purchase of CSS while the parties were negotiating the acquisition.

(2) Ableview has continued to hold itself out as a seller and has sold either genuine or counterfeit CSS products.

(3) Without CSS' knowledge or approval, Ableview has been registering and selling face mask products in China, allegedly using CSS confidential and trade secret information.

(4) Ableview maintained a separate operating entity, Shanghai Jingyue Trading Company (Shanghai Jingyue), which entered into a re-distribution agreement with another party for the sale of CSS products in China.

(5) Internal messages produced by Ableview in March 2026 revealed Ableview had been collaborating with social media influencers to promote CSS products in violation of the agreement. Those messages also indicated Ableview promoted the Supreme Olive Serum as containing high levels of "oleuropein." In a social media post responding to the Biao post, Ableview's own social media influencer posted in English that the olive extract in the product was olive *fruit* extract, but the Mandarin translation identified the ingredient as olive *leaf* extract.

(6) Nearly a year before the influencer crisis, Ableview had the Supreme Olive Serum tested without CSS' knowledge. The results allegedly showed no detectable levels of "oleuropein." Ableview did not disclose the results to CSS, and continued to market the product as containing high levels of "oleuropein."

Ableview argues the prior operative counterclaim already alleged Ableview previously conducted oleuropein testing. CSS clarifies, however, that the proposed amendment concerns *additional* testing was conducted in *2023*.

The court accepts CSS counsel's representations, as an officer of the court, that Ableview's document production and deposition testimony revealed new facts warranting the proposed amendment, including those identified above. Although CSS previously knew *some* of the general facts underlying the proposed allegations, the amendment seeks to supplement those facts with newly disclosed information.

Under these circumstances, the court finds CSS acted with sufficient diligence in pursuing the amendment.

The court next considers whether CSS has established excusable neglect sufficient to justify the amendment at this stage of the proceeding.

The court has already addressed the length and reasons for the delay. The remaining consideration is whether CSS acted in bad faith and whether amendment will prejudice Ableview.

Ableview contends the motion is brought in bad faith because the proposed amended counterclaim asserts false claims. Specifically, Ableview disputes the allegation that CSS provided it with the actual ingredient lists for the olive extract products used in Supreme Olive Serum.

CSS responds that Ableview conflates two distinct sets of ingredient lists: the raw olive extract ingredient list and the Supreme Olive Serum trade secret formulation. According to CSS, the proposed amendment refers to the ingredient for the raw olive extract used in its products. CSS asserts that Ableview's witness, Max Shen, testified that Ableview was supplied with the ingredient list for the raw olive extract used in the Supreme Olive Serum at the beginning of the parties' relationship and the list identified the ingredient as olive *fruit* extract.

The court accepts CSS' explanation and finds no basis to conclude CSS is attempting to assert false claims through the proposed amendment. Accordingly, the court finds CSS did not act in bad faith in seeking leave to amend by alleging Ableview was provided the ingredient list for the olive extract used in its products.

The court next considers whether permitting the amendment would prejudice Ableview.

Ableview first argues the proposed amendment removes key admissions from CSS' counterclaim by replacing references to "olive leaf extract" with "olive extract." CSS explains that since prior counsel filed the original counterclaim, it has disavowed the position that it was obligated to supply olive *leaf* extract as opposed to olive extract generally.

The court finds CSS may amend its pleading to amend or clarify its position in this regard. Moreover, Ableview appears to have had the opportunity to question Petrillo about the distinction between olive *leaf* and olive *fruit* extract, the extract supplied for the product at issue, and Petrillo's knowledge of these matters. The parties remain free to argue the significance of this distinction. Indeed, they have addressed the issue extensively in their pending dispositive motions, which were filed after Ableview's document production and witness depositions.

Finally, Ableview argues it will be prejudiced because discovery has closed and it cannot investigate the new allegations in the third amended counterclaim. They contend the amendment raises, for the first time, that Ableview used confidential information provided by CSS to secretly register certain CSS products with the Chinese National Medical Products Administration; that Ableview continues to sell CSS products, directly or indirectly; that CSS has been approached by multiple sales channels in China seeking confirmation that Shanghai Jingyue is an authorized distributor; and that Ableview has usurped the CSS brand and business in China and elsewhere.

CSS responds that these facts were within the exclusive control of Ableview, such that it should have already investigated these issues. With respect to Shanghai Jingyue, CSS has already produced the correspondence it received from Chinese distributors asking if Shanghai Jingyue was CSS's authorized distributor.

The court agrees that most of this information appears to have been disclosed by Ableview in connection with its production of documents and depositions, and was within Ableview's possession and control. Moreover, Ableview has not identified any specific additional discovery or investigation it would need to conduct in response to the proposed amendment.

Accordingly, the court does not find Ableview will be prejudiced by the proposed amendment, and CSS has demonstrated good cause as well as excusable neglect to justify amending its counterclaim at this late juncture.

## III. CONCLUSION

For the reasons set forth above, CSS' motion for leave to file a third amended counterclaim (ECF Nos. 117, 119) is **GRANTED**. The Clerk shall **FILE** the third amended counterclaim, ECF No. 118-1.

The court recognizes this order may have an impact on Ableview's pending motion for summary judgment as to CSS' counterclaims. Ableview may file a motion either seeking to amend or supplement its motion in light of the filing of the third amended counterclaim.

**IT IS SO ORDERED**.

Dated: October 19, 2026

Craig S. Denney
United States Magistrate Judge